And let's take up the next case at hand, which is E.H. Andahl v. State Farm Fire & Casualty Co. Good morning. Please proceed. May it please the Court, counsel. Good morning, Your Honors. My name is Matt Young, and I represent E.H. in this appeal against State Farm. Seeking to have this honor of a court, I find that State Farm has a duty to defend this young man in a lawsuit that has been going on in federal court since May of 2014. Counselor, I'll let you talk. No, please. No. Okay, all right. I'm sorry. I'm going to jump right in, but go ahead. Well, that's fine. Whenever you want to jump in. This appeal arises, Your Honors, from an underlying lawsuit wherein two minors had an encounter with one another of a sexual nature on April 13, 2013. And it should be noted that on the day of the alleged incident, my client, E.H., was 15 years old, and the female plaintiff was 16 years old. And just so we're clear, I'd like to point out at the outset so the panel understands that while the female minor alleges she was sexually attacked, we have at all times denied any sexual attack. It's not like we're coming in here and we've never said that there was sex between the two, but we just didn't mean to harm her. We are denying a sexual attack at all, and it has always been denied. And so as it relates to this duty to defend, the general principle that I would ask this Court to keep in mind is that if the underlying lawsuit contains any indications wherein there is even a possibility of recovery to which insurance could possibly apply, there is a duty to defend. State Farm must defend E.H. with respect to all theories set forth in the complaint. The Illinois courts have stated the insurer may refuse to defend only if the allegations of the underlying complaint preclude any possibility of coverage. The threshold requirement that we have to meet in order to satisfy a claim of potential coverage is so small, it is so minimal, and it's set up that way by design by the Illinois courts. The complaint need only present a possibility, not even a probability, of recovery in order to obtain a defense. And as it relates to this point, I would point out the overriding guiding principle that should guide this Court's decision-making is that in the insurance context, in the insurance world, Illinois law is clear. And that is, in determining whether or not a complaint sufficiently alleges an occurrence, the focus of the courts in Illinois at all times is whether the injury was expected or intended by the insurer. The injury, not the actions, but whether the injury was expected or intended by the insurer, not whether the acts of the insurer were performed intentionally. You don't look at the acts, you look at whether the harm was intended. An occurrence, which is defined as an accident in insurance policies, involves the consideration of whether the injury was expected or intended from the standpoint of the insurer. That is country mutual versus hate. And in deciding whether there's a duty to defend in this particular matter, the Court is urged to remember that the language of the policy must be strictly construed in favor of my claim and against State Farm, and any doubt as to coverage must be resolved in favor of my claim. Counsel, let me jump in now and ask my question. I guess I want to take issue with the form of the question which you have certified for us to answer. You argued here, you want us to declare your client has coverage. And the Court, your client has coverage. What the Court did was take a wait and see approach. We're going to wait and see and let some facts come out, let this proceed. And your question to me is, does Illinois law mandate the trial court to await resolution of the underlying litigation prior to determining whether there's a duty to defend? So I understand you want us to determine that there is coverage, but your question really doesn't ask that. It asks whether or not the trial court is mandated to take the wait and see approach that they've taken. Right. Absolutely. The answer is clearly no. The answer is absolutely no. We know the answer to that question is no. Illinois law cannot mandate the underlying litigation to be resolved before you need a defense. You need a defense. You determine whether or not there's a duty to defend by comparing the allegations of the complaint to the policy. The reason why, Your Honor, to answer your question, I think both sides even stated, I argued it all throughout the trial court. I argued it now throughout this appeal consistently that you can't take this wait and see approach. It's untenable. And it's against the law because the courts have to look at the allegations of the complaint, the underlying complaint, and compare it to the policy. You don't get a defense after the case is fully defended. They admit it. They admit to the trial court, yeah, a duty to defend should be decided now. So we answer the question no, then we send it back to the trial court and say, answer the question right now rather than us answering the question. No, you don't. Because? And here's the reason. You're right. I mean, you could say no and send it back, right? You could. That's what the question is. That's what the certified question is. But the Supreme Court in Boyd, Illinois Supreme Court, in Boyd v. Travis, in discussing Supreme Court Rule 366 in conjunction with the 308 appeal, which is what we're hearing. We're on a 308 appeal. The Supreme Court in Boyd said the appellate courts have the power to go beyond the certified question asked and make any order that should have been made in the trial court. And so we're looking at the order in the trial court that is the subject of this appeal, which is the 19-page January 30, 2015 order issued by the trial court in which he said, as you stated, he's going to take a wait-and-see approach. He's going to wait and see how the jury in the federal court decides before determining whether or not this young man is under defense by state fire. And the Boyd court said you can make any order that should have been made in the trial court if you have the evidence in the record before you. And in that 19-page order, Justice Horne, you have a finding by the trial court indicating the reason why that he's going to take a wait-and-see approach is because a jury may find that my client did indeed act intentionally or that he acted negligently, intending no harm. He recognized that possibility. He recognized the potential for a jury to find that way. And he said, if they find that he acted negligently, intending no harm to the victim, well, then you're very well made. Then you're going to have a specific finding by the jury as opposed to a general verdict? Well, exactly. That's the problem. I'm just saying, what happens if you get a general verdict? Well, what happens, Justice Welch, if I get a not guilty? Right. What if you don't get any finding? That's why it's so, because of that question, because you may just get a finding of we find in favor of the plaintiff against the defendant. We don't know on what counts. But we may win. And I fully expect to win if this case even goes. What if it doesn't even go to a jury trial? What mandates this case to even go to a jury trial, Your Honor? But because of the fashion of this case of taking a wait-and-see approach, that's why you can't do it. In deciding a duty to defend, Justice Schwarm, you have to determine at the outset of the underlying litigation whether a defense is owed or not. You can't wait until the underlying case is fully defended and a verdict is entered because, one, you may not even get to a jury. Two, they may not, just like Justice Welch said, may issue a general verdict. And, three, I may win the case. We're going to get a not guilty. And that's still what the State Farm is going to say what you won. But we don't know if you won in a negligent count or intentional forked out. Who knows? And that's the problem. See, the allegations of this particular complaint, State Farm goes to great lengths, goes to great lengths to bring out all of the vicious allegations that are presented against my client. They want to bring out every single bad allegation in the complaint. And I admit, there's no running from it. The trial judge in the underlying case said in paragraph 31 there's an allegation that was incorporated into all of their counts that my client acted willfully and maliciously. Now, remember, it's been denied. Okay? We've at all times denied that. So there's at least a question of fact. You can't enter a summary judgment in favor of an insurance company saying there's no possibility of recovery on his rights to a duty to defend because at least we have that question of fact, whether or not he acted at all. But remember, it's one allegation. There's one allegation in a 21-page complaint. There are many allegations of conduct. And I'm not going to take these away. I'm just going to say, you know, there's a count in there for negligent infliction of emotional distress, which we all know would provide a defense for us. But I'm not going to go into that negligent infliction of emotional distress because a lot of judges hear someone just adding negligence and just say, oh, well, you're just trying to do that in order to try to invoke coverage. So it's an easy way out. Even though in this particular matter it may very well be the only case that the plaintiff in the underlying matter can prove. But let's just look at count one. And let's just look at the very first count, which is intrusion upon seclusion. Right? And it says that E.H., my client, intruded upon the seclusion of A.S. when my client entered the bathroom after her. Allegation two, the intrusion as described above going into the bathroom would be highly offensive. And that's fine. A woman being followed into the men's bathroom could be highly offensive. And because of that offensive conduct and because of that intrusion upon A.S.'s seclusion, it approximately caused A.S. to suffer injuries and damages. That count is not dependent upon the jury finding that a sexual attack took place. If those allegations are believed, if those allegations contain just in the first count that we looked at, and we can look at all of them, but just in that first count, none of these counts are dependent upon the jury determining that a sexual attack took place in that bathroom. They can find in favor of the plaintiff and against my client on intrusion upon seclusion in count one without finding that a sexual act took place. And if indeed that does occur, because we all know, if there's even a possibility of recovery under one count, all of the counts have to be defended. Because that is a possibility to occur. And I'm not just saying it. I'm not just saying it. I'm not just presenting this factual scenario to you and saying, see, look, they could find that way. This is how the trial judge found it. This is a scenario that the trial judge explicitly found. He said the jury may find that my client acted intentionally or that he actually negligently intended no harm to the victim. He identified that possibility of a jury finding in that way. And so when he identifies it, to get back to your overarching question that you asked me originally, when he identifies that possibility, Judge, because of the only Supreme Court's power conferred upon the three of you, you have the power to make the orders that should have been entered. And because he made that finding of that possibility, there is no other way for him to find. There is no other outcome possible other than to say State Farm owes this young man a defense. Because he already recognized it. He already recognized it in that January 30, 2015 order. His analysis, the trial judge's analysis in this matter as it relates to the possibility of an alternative recovery was spot on. It was absolutely right. A jury could find that my client intended no harm. The conclusion that he reached, however, was wrong. The most similar analogy that I can think of in the legal context is a trial judge analyzing a piece of evidence and after going through the proper analysis says, yes, this piece of evidence is indeed hearsay. And because I found after connecting the proper analysis that it's hearsay, it is therefore admissible. Obviously, his analysis was right, but the conclusion was wrong. In this particular matter, the trial judge's analysis of the possibility to find that my client did not intend to harm upon the victim because they are both minors and you cannot infer an intent to harm under the country mutual versus Hagan case. Because he found that possibility, his analysis was correct, but his decision, his conclusion that therefore I have to wait and see as to how a federal jury would find after a trial was over to determine whether or not a defense is owed was wrong. That was the wrong conclusion. So I agree, and I think we can all agree that the answer, and I think State Farm even admits it now in Section 2 of their brief, the answer is no. A trial judge cannot wait and see how a jury finds before deciding whether or not a defense is owed. But we ask you to go one step further because it can't stop there. Because the trial judge has already made specific findings in this case, and the specific findings preclude the possibility of any other answer other than State Farm is owed a defense. Therefore, because you have the power in Rule 366 to go beyond a certified question as laid out by Floyd v. Travelers, we would ask for you to answer the certified question no and mandate that State Farm provide a defense. I've always been told just because I have all the time to use doesn't mean I have to use it. That's correct. Thank you. I have a chance for a follow-up. I do have one question. Yes, sir. Can you point me to anywhere in the record where there is the complaint for the declaratory judgment or the insurance policy? I think State Farm correctly pointed out that I did not include that in my supporting record. Justice Moore, in this matter, on a 308 appeal, per procedure, I have to determine what I think it is that the appellate court needs in order to answer this question that is before it. I didn't think that it needed the complaint. I didn't think that it needed the insurance policy. I mean, everything is accurately stated as it relates to what the insurance policy says, as it relates to what we're asking for. But, no, they're right. I didn't include it. I included every single pleading on the issue. I included every single briefing on the issue. They could have, you know, just as what's good for the goose is good for the game, or they could have added it if it was necessary. But, no, we didn't. You're still asking us to answer questions we would have a difficult time answering without that information, aren't you? No. With all due respect, Justice Moore, I don't think so, because all you need to do is look at how the trial judge already found it. He already found the possibility. And State Farm doesn't even address it. They just don't even acknowledge it. There's not one mention of it in their brief. But he's already found the possibility, Justice Moore, that a jury could find that my client did not intend to cause harm to that victim, allegedly. And because of that, because there is that possibility, keeping in mind the overarching principles that guide your decision-making, if there is any possibility of recovery, you must find that there's a duty to defend. The threshold in order to get a defense is so low, by design. It's not just me saying it. It's written in our jurisprudence going back hundreds of years that the decision-making process that guides the courts is that it should be easy to get a defense. Now, I'm not saying that you get indemnification. And indemnification does have to wait until another day to see how the jury does find it. But a defense is easy to get by case law, by design. If there is a claim made against someone for which you pay insurance premiums for to protect and you deny that, I didn't do this. They're making a claim against me. I didn't do it. As long as there's that question of fact as to whether or not a defense is open, a defense is open. The default is that a defense is open. The default is not that a defense isn't open. It's easy by design because you say, hey, we're going to stick with you. You've paid us. You're our guy, until a unanimous verdict comes back saying that you're wrong, that you did indeed do it. The insurance company needs to stick with its insurer. When there's even a possibility for any question as to whether or not a defense is open, a defense is open. So, I don't think that you'd have any problem answering the certified question in this case and mandating the fact that the State Farm should be able to defense because the trial judge has already done it for you. The trial judge has already done it for you. He's already done the analysis. He did the correct analysis. He looked at the complaint for declaratory judgment. He looked at the language of the policy. And considering all that, he said, yeah, there is a possibility that the jury can find the act of intentional or the action may be only intending no harm to the victim. The judge has already made your job easy. Just like I said, you reached the wrong conclusion. Thank you, counsel. Thank you. Argument from the athlete. Very pleased to court. Counsel Michael Borders on behalf of State Farm Farm Casualty Company. This case is before the court, obviously, on a Rule 308 finding and a certified question that this court accepted. It does not appear on interlocutory appeal from a non-final order entered by the trial court. Specifically here, the trial court denied Plaintiff's motion for summary judgment on the duty to defend. He deferred ruling on State Farm's cross motion for summary judgment on the duty to defend, largely believing that he was hamstrung by the uncertainty raised by Country Mutual v. Hagen and the inferred intent doctrine and how it applied to Myers. And that is what the certified question directs. And this is an unusual case and may not be unprecedented where I think both parties agree that the certified question should be answered in the negative. That's the extent of our agreement. The trial court actually certified its own question on Plaintiff's petition for a certified question, but did not certify the question as phrased by EH's counsel, which did state, beginning, does State Farm hold Plaintiff a duty to defend? That was their proper question. The trial court did not certify that question because that would be an improper way to get into the appellate court, an interlocutory review of a non-final order. Rather, he certified the question as he deemed would be helpful to be answered for him by this court, which is, you know, does Illinois law mandate that the trial court await resolution of the underlying litigation prior to determining whether or not there's a duty to defend to a minor accused of committing an act that would otherwise be barred from coverage under the inferred intent doctrine where there's also an allegation of negligence. So Illinois law, in our view, does not mandate that the trial court not make that ruling. Here the court elected not to make that ruling. I think it was within his discretion to do that under Hayden, but we believe on the facts present in this record, the trial court could have and should have addressed and decided State Farm's cross-motion, which it held in abeyance. And, of course, we've been asking the trial court, as we did originally, to go ahead and make the finding that there is no duty to defend. Now, Hayden does not mandate that the court defer ruling when any minor, regardless of age, is accused of sexual assault of another minor. Rather, it required a case-by-case analysis. So in Hayden, the minor was 14. The court, in a case essentially of first impression in Illinois, looked at cases around the country and decided with the minority, although it said it was only a slight majority of courts around the country, would apply the inferred intent as a matter of law to minors accused of sexual acts, such as the plaintiff, the defendant here. But they looked at that case and said that they were not going to apply inferred intent with that minor who was 14. But what Hayden didn't address was what do you do with minors who are 15 to 18. And here we have a 15-year-old. There's a number of distinctions between the present facts before the trial court and Hayden. Number one, the subject complaints allegations are distinguishable in material respects because of the age. So I just mentioned that 15-year-old versus 14-year-old. And in Hayden, the court talked about reconciling its view with the common law of Illinois, which is the old-fashioned rule of sevens, right? And up to the age of 14, people are not held to the standard of an adult. And in Hayden, the child was 14. In this case, this high school kid was 15. He was held to the standard of an adult. So that's a meaningful distinction. So it's consistent with the civil law of this state to infer intent when a minor is 15, accused of a sexual act. It's also consistent with the criminal law of this state, which provides for the charge of criminal sexual assault against minors under the age of 17. They are capable of forming intent criminally. The courts in Illinois have also applied circumstantial evidence to infer that sexual acts of minors are done for the purpose of sexual gratification when the minor is of similar age here, over 15-year-old. It's important to note, actually, that the Hayden policy actually was an older version of a homeowner's policy, where what we always referred to as an intentional act of exclusion only referred to intentional injuries rather than expected injuries, intended or expected injuries, present in the current policy. And perhaps, I think, also very fundamentally, the Hayden complaint was a negligence complaint that characterized acts that most of us would agree are intentional, but also was devoid of any allegation of intent to harm. And this complaint is only premised on intent to harm. The only allegations of fact are of intent to harm. And, you know, we highlight those because that's what the plaintiff alleged. The negligent infliction of emotional distress count that was added after the cross-claim for summary judgment was filed does not allege a single new allegation of misconduct against the plaintiff. All the facts are incorporated by reference. All the facts are of intentional misconduct, that he followed the plaintiff into the women's restroom with the intention to perpetrate a sexual act, that he willfully and maliciously perpetrated a sexual attack, he willfully touched the plaintiff in an offensive and harmful manner without his consent, and restrained the plaintiff against her will. All of these are intentional allegations of fact. So, and the Plaintiff's Counsel brings up, I think, for the first time today, the argument about intrusion upon seclusion. But he's never argued, he didn't even argue the trial for intrusion upon seclusion was potentially covered by this policy. One, why it's an intentional act. Number two, it's not accidental. Number three, it doesn't allege bodily injury, which would potentially trigger coverage. And even in that count, in paragraph 41, it said he followed her into the bathroom with the intent to do so and intruded upon her seclusion. So that wouldn't have ever triggered coverage in the first place. So, on this record, with these allegations, 15-year-old insured, and these specific allegations of fact, the trial court could have, and I actually think should have, decided the duty to defend question on State Farm's motion and not deferred ruling and not have been constrained by Hagan. So, let me go back and make sure I got you correctly here. The certified question which we have, which was drafted by the trial court, you also say should be answered no, but we should then go on and say no, you don't have to provide, you don't have to defend. I do not think this court really, I'd love it if it did make that decision, obviously it would be in my client's best interest, but I think the proper procedural thing to do would be to send this case back to the trial court, answering the question in the negative with directions to consider and decide State Farm's motion for summary judgment. And if the court deemed it appropriate to provide guidance on its interpretation of Hagan and the application of the Inferred Intent Doctrine in Illinois for a minor over the age of 15, that might be in the interest of judicial economy. In my view, that's an alternative basis for State Farm's motion. So one is based upon the facts alleged. We don't need Inferred Intent, all right? Because the only thing that is alleged is intent, despite a label on one count, which doesn't govern the outcome as the trial judge noted. Alternatively, we argue that the Inferred Intent Doctrine in Illinois should be applied to minors age 15 and over, consistent with the civil law in this state and consistent with the criminal laws in this state and consistent with the public policy that was established in a number of cases, including Western States v. Bobo, by this court in 1994. That is the root bed of the Inferred Intent Doctrine because of the common practice of tagging along negligence claims in sexual abuse cases in a strategic attempt to get insurance coverage for that misconduct. Of course, the insurer denies the allegations. Every defendant denies the allegations. But that's why the duty to defend is governed by what is alleged against the defendant. And that, in this case, is all intentional misconduct. And that is why the simple labeling of a count in negligence, as they did with negligence in affliction here of emotional distress, is not outcome determinative, and the trial court has recognized that. Because when you look at that count, which is in the record at page 9 of the complaint, which we attach actually to the appendix, to our brief, they incorporate all the averments of the previous intentional counts in count 6, make no new allegations of fact, and just simply allegedly breach the duty for the reasons previously stated and inflicted emotional distress upon the plaintiff. So that does not allege an occurrence. That does not allege conduct that's outside the exclusion and wouldn't trigger a duty to defend without the Inferred Intent Doctrine. So to summarize, negative to the certified question. The court should, in our request to the court, then remand the case with directions to entertain and rule on State Farm's motion for summary judgment. And we would suggest it be appropriate for the court to provide guidance to the trial court on the implications of country mutual versus Hagan as it relates to the Inferred Intent Doctrine and to clarify a statement made in country mutual in Hagan that says the Inferred Intent Doctrine doesn't apply to minors. It states that generally, which could include up to 18 years old, but the facts before Hagan were just a 14-year-old, and nothing was presented in Hagan or was argued in Hagan. How does that apply to a 15- or 16- or 17-year-old who is not yet a minor but otherwise held to the standard of adult in a civil court? Now, you may have unique circumstances that come before a trial court in a case-by-case analysis which would cause the court not to apply the Inferred Intent Doctrine. Let's say a child learns the allegation of reduced mental capacity. Therefore, it would impact the child's ability to form intent. Then maybe the court would not apply the Inferred Intent Doctrine, but would only be in those exceptional circumstances where there would be an exception from the rule that could apply to a minor. I mean, we must remember that that's what the root cause of this issue is and what Hagan talked about is when you have really young kids, you have a 9-year-old having sexual contact with a 7-year-old or another 9-year-old, you might argue, well, they're not old enough to appreciate the harm that could result from the conduct and you need a case-by-case factual analysis. That goes away when you have high school teenagers like we have in this case and intentional allegations as we have in this case. Counsel, before you say that, let me ask you another question. If this were taken as an interlocutory appeal rather than a certified question, would your brief be any different? Both of you are saying, well, the question you both agree, no, but you want this court to decide, and would your brief then be any different if we go that next step, which evidently you both want us to do? Well, it's tempting to say it wouldn't be any different, but the fact of the matter is that it would be different because I don't know. If you read the judge's order, I think he came with an air trigger of granting my motion for summary judgment and then instead of granting it, he held it in the banks. He didn't order us to defend. He said, well, let's take a wait and see and we can go back and reimburse later. And I think he felt constrained by country mutual versus Hagan in making that decision. He never reached an alternative argument that we had on the Willful and Malicious Act exclusion, which doesn't even consider the intent of the harm by the insurer under State Farm versus Martin. And we argue that this sexual attack, as alleged here, is a Willful and Malicious Act. Regardless of the intent to harm the young lady, that is not covered. So we didn't have a record from the trial court on how the judge would consider that. So that's one example about the brief would differ. I think the court probably does, through the briefs, have the relevant provisions of the insurance policy here, certainly reattach the complaint to our brief as an exhibit so it has those key documents. But the argument has not been. The court doesn't have the benefit of the trial court's ultimate ruling, and the argument isn't as fulsome as it otherwise would appear. Thank you. Thank you. Mr. Young, I was going to pose the same question to you that I just posed to the opposing counsel. Do you want us to answer that next question? Have you fully briefed that next question? The question, Your Honor, and the reason why counsel for State Farm couldn't say whether or not his brief would be any different is because it can't be. The trial judge already found in his order that there is the possibility, until the trial effect in the underlying case determines whether E.H.'s conduct constitutes an intentional act clearly excluded by the policy, or if he was merely negligent and intending no harm to his victim. This is the order, this January 30, 2015 order. This is what we're hearing. It's a certified question as it relates to this order. This order is before him. This is how that certified question pertains to this January 30, 2015 order. This order is here. It's before you. There is a finding by the judge of the possibility of recovery. Counsel for State Farm cannot say that you could possibly ever find that State Farm was on the defense. You can't possibly brief it any different. It's done. He found that possibility. It's over. If you go back and you listen to this transcript of counsel for State Farm's arguments, I hope you listen to it, and I hope you listen to it carefully. All he talked about was actions. Acts, acts, acts. Intentional acts. These all show allegations of intentional facts. He wouldn't go so far as to say he had an intent to harm. He never said that once to you. He always talked about acts. He always talked about the acts. But like I said, in 21 pages of a complaint, there are a lot of allegations of conduct of acts. They're not all as lavish as he says they are. There's someone just fouling into the bathroom, it being offensive, and, therefore, approximately causing her injuries. Look through every single count. Every single count, except for intentional infliction of emotional distress, it says because of the actions, A.S. received injuries. E.H.'s actions approximately caused A.H.'s injuries. Nowhere does it say that there is one allegation that he intended to cause her harm other than the intentional infliction of emotional distress. So if you go back, State Farm was successful in confusing the trial court judge about all of these intentional acts. All of these are allegations of intentional facts. That's fine, but they're all about actions. And there's a whole lot of other conduct. That a jury doesn't have to necessarily believe is true. That would allow a jury to find in favor of the plaintiff that doesn't constitute malicious and willful acts. Because he never talked once about an intended or expected injury. He only ever talked about an intended or expected actions. So talking about hanging, right? The judge thought he was compelled to take a wait-and-see approach based on the fact that, hey, State Farm latched onto it in the trial court. They're doing so here. It shows up in an 11-page order on page 8, after the analysis and the conclusions are already done, saying that the infirm intent doctrine doesn't apply to minors. The reason is simple. Juvenile cases are different. Consent, you can't have consent as a defense in a juvenile case because minors are determined to not have the ability to understand the consequences of their actions. It doesn't matter whether you're a victim or a perpetrator. It just matters that you're a minor. It makes good sense. The infirm intent doctrine is good for a number of reasons. People, adults who sexually abuse minors are despicable. They disturb me to my core. I have two young kids at home. It disturbs me greater. The infirm intent doctrine says if you do that, if you're an adult who abuses a minor, you can't say, well, I didn't intend to harm them. I love them or something sick of that nature. It's different when you're talking about two kids of 15 and 16 years old. The infirm intent doctrine, you can't infer that intent to that young man. But I want to get to this quick because I see that I have less than a minute. That was dicta saying you got to wait and see in Hagan. Hagan clarified in this last paragraph, in the last paragraph of its opinion, Hagan said when there is a bona fide dispute as to whether an insurer acted negligently or intentionally, the issue of indemnification, judges, the issue of indemnification may not be decided on a declaratory judgment until the underlying litigation has been completed. Hagan tells you that right there. It clarifies what he was talking about when you're saying you got to take a wait and see approach. It's not talking about a duty to defend because you can't possibly do it on a duty to defend. It's only the indemnification, and that's what has to wait and see, judges. Thank you. Thank you, counsel. We'll take this case under advisory. Thank you.